## WATKINS v. LANG.

1. A bond payable " in three equal annual instalments from this date, with. interest payable annually until the whole be paid,—that is, one third Nov. 10, 1866; one other third with the like interest Nov. 10, 1867; and the other third with the interest Nov. 10, 1868,"—draws annual interest on the several instalments after maturity as well as before.
2. *Wright* v. *Eaves*, 10 *Rich. Eq.* 582, recognized and followed.
3. The interpretation given by the circuit judge to a very obscure credit endorsed upon a bond, sustained.
4. This court will not ordinarily interfere with the discretion of the circuit judge in recommitting a report to a referee, in whole or in part, for further investigation. The judge may confirm the report as to some of its findings of fact, and as to others recommit it for further testimony and report.
5. A trustee cannot introduce the book entries of her deceased attorney. to prove that rents were not received from the trust property during certain years.
6. Where a lady trustee produced the tax receipts for all the years of her trust save one, and there was no proof that the taxes for that one year were not paid, and the attorney who had attended to all her business being dead, the circuit judge committed no error in presuming payment by her of the taxes for that year.

Before PRESSLEY, J., Kershaw, June, 1881.

The case is fully stated in the opinion of this court.

Messrs. *W. H. Lyles* and *J. T. Barron,* for plaintiff.

Messrs. *Chesnut & Workman,* contra.

March 18, 1882. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. B. F. Watkins in his lifetime (1858) sold a tract of land known as " Rock Hill " to Mrs. Esther A. Cunningham for $12,000, taking her bond for the purchase—

money, payable in instalments, with John Brown and Anthony M. Kennedy as sureties, who, to indemnify themselves as such sureties, on the same day took a bond and mortgage from Mrs. Cunningham on the said tract of land. Sundry payments from time to time were made by Mrs. Cunningham on the bond for the purchase, but not sufficient to satisfy the bond. In the mean time Mrs. Cunningham contracted to sell "Rock Hill" to John D. Kennedy, and let him into possession on condition that he would pay off the balance of the debt to Watkins, but executed to him no deed of conveyance. While so in possession, John D. Kennedy, having made several payments to Watkins, mortgaged the said "Rock Hill" plantation in November, 1865, together with a tract of land adjoining the same, known as the "Doby Place," of which he was the owner in fee, to Misses Susan M. Lang and Murray Lang, to secure a bond for $3000, payable in gold. On November 16, 1869, Mrs. Cunningham, B. F. Watkins, and John D. Kennedy entered into a *tripartite* agreement, by which Mrs. Cunningham bound herself to execute title for Rock Hill to John D. Kennedy *in trust* to pay the bond of Watkins, recognizing, however, the mortgage of the Misses Lang as the first lien upon Rock Hill after the Doby Place was exhausted, and directing that the same should be first paid. The title to John D. Kennedy was executed in accordance with this agreement.

Affairs stood in this condition until 1872, when John D. Kennedy was adjudged a bankrupt, and all his interest in both tracts of land were ordered to be sold in bankruptcy. In the mean time John Brown and Anthony M. Kennedy had become insolvent and Murray Lang had died, leaving Susan M. Lang her sole heir and distributee. She administered upon the estate of her deceased sister, and having fully administered the same, retained the bond of John D. Kennedy as her own property in severalty. At the sale of the property of John D. Kennedy, ordered by the bankrupt court, Susan M. Lang purchased all his interest in the aforesaid tracts of land. The rent of Rock Hill for the year 1872 was assigned by J. D. Kennedy to William M. Shannon, Esq., for Watkins and Miss Lang.

B. F. Watkins died, and his executrix, Elizabeth C. Watkins, instituted these proceedings, asking to be subrogated as creditor to the rights of the sureties John Brown and Anthony M. Kennedy in the bond and mortgage of Mrs. Cunningham to them, and for foreclosure of the said mortgage. Judge Hudson heard the case, and held that Mrs. Watkins as executrix was not entitled to be subrogated to the rights of John Brown and Anthony M. Kennedy ; that Miss Lang purchased the two tracts of land at the bankrupt sale *in trust*, first to pay her own debt of $3000 and then to pay the balance due upon the bond of Mrs. Cunningham to Watkins, and referred it to the master to ascertain the amounts due on the bond of Esther A. Cunningham to B. F. Watkins, and also on that of John D. Kennedy to Miss Lang ; and also, as agreed by the parties, to take an account of Susan M. Lang, as trustee, for the rents, issues, and profits arising from the "Rock Hill" and "Doby" plantations.

Under this decree the master, John M. De Saussure, Esq., took much testimony and made his report. Both parties excepted, and the case came up on the report and exceptions before Judge Pressley, who made a decree, simply sustaining some of the exceptions as numbered and overruling others. From his order both parties appeal upon the following exceptions :

PLAINTIFF'S EXCEPTIONS.—"1. For that his Honor overruled plaintiff's exceptions to so much of the Master's report as allowed interest *with annual rests* on the bond of J. D. Kennedy to the Misses Lang *after* the maturity thereof.

"2. For that his Honor did not construe the receipt endorsed on said bond of April 17, 1871, so as to allow a credit thereon of two hundred and fifty dollars in addition to all interest on said bond up to date.

"3. For that his Honor sustained defendant's exceptions to so much of the master's report as refused to allow her credit for *the taxes* claimed to have been paid in 1876 for the year 1875.

"4. For that his Honor allowed the defendant a further

opportunity to introduce evidence as to the diligence used by her to collect the rents of the 'Rock Hill' and 'Doby' places for the years 1877 and 1878, and refused to allow plaintiff to introduce further testimony as to the value of the 'Doby' place."

DEFENDANT LANG's EXCEPTIONS (omitting one abandoned).— "1. For that his Honor confined the privilege of the defendant to prove due diligence in collecting the rents, issues, and profits of Rock Hill and Doby places and failed, through no fault of hers, to the years 1872 and 1873.

"2. For that his Honor overruled the defendant's fifth exception to the master's report and denied to the defendant the right of showing by the books of Wm. M. Shannon, deceased, the agent and attorney of the defendant, who attended to the renting, of these places—Rock Hill and Doby—and the collection of the rents, the actual amount received by him therefor, and the amounts actually paid out by him therefrom during the time he acted as her attorney and agent in the business, and as casts upon the defendant the burden of showing what amounts of rent cotton she failed to receive and why she so failed, and that the same was not for want of due diligence on her part."

The Circuit decree decides the numerous exceptions to the referee's report simply by confirming, overruling, or recommitting them by number without any explanation of the subject considered, and, therefore, in order to prevent confusion and make the rulings intelligible, we will not consider the exceptions *seriatim*, but endeavor to classify them according to subject-matter:

First, as to the mode of computing interest on the bond of J. D. Kennedy to Miss Lang. There is no copy of the bond in "the Case," but we find in the report of the master, John M. De Saussure, Esq., that the condition is in these words: "Three thousand dollars in American gold coin in three equal annual instalments from this date, with interest payable annually until the whole be paid; that is to say, one third with interest on the whole November 10, 1866; one other third with

the like interest on November 10, 1867; and the other third with the interest November 10, 1868, without fraud, etc.

The bond was executed on November 10, 1865, which was before the Act of 1866 (*Gen. Stat.* 318), allowing parties to agree upon any specific rate of interest, but there is no question of usury in the case. No point is made as to *the rate* of interest, nor as to the manner in which it should be calculated, up to the time the last instalment fell due, November 10, 1868, but simply as to whether *after that time* the interest should be calculated *with annual rests* as before. The question is purely one of construction. What was the intention of the parties as shown by the bond itself? Most of the cases relied on refer to *the rate of interest* and not the *manner* of counting it, but the questions are analogous and the rules of construction the same. The referee in the case counted the interest with *annual rests* and the Circuit judge confirmed it. Was that error? The proposition of the appellant is that there is in the bond *no contract, express or implied,* for the payment of any interest *after* November 10, 1868, and consequently the legal rate, as well as the manner of counting the interest, without compounding, attached at that time.

One of the first rules of construction is that every word of a written contract should, if possible, have its proper meaning. The bond here contains the words "with interest payable annually," and if the debt were payable at twelve months, or at a shorter time than twelve months, in order that the word "annually" could have some meaning, it would be necessary to construe the contract as extending beyond the time when the money fell due. *O'Neall* v. *Bookman,* 9 *Rich.* 80; *Sharpe* v. *Lee,* 14 *S. C.* 341; *Mobley* v. *Davega,* 16 *S. C.* 75. In the case last cited it was said that the word 'annually' conveys a distinct idea that the matter might not stop at the end of one year, but go into years beyond. It is defined as follows: 'Yearly,' 'returning every year,' 'year by year,'" etc. The instalments of the bond before us were not all due within a year, but in *one, two,* and *three* years, and the word "annually" might have some meaning within the period of the stipulated credit, being three years, and therefore, if there was nothing

else in the bond, this word "annually" alone would not be con-
clusive of the intent of the parties that the contract was to ex-
tend beyond the maturity of the bond.    *O'Neall* v. *Sims*, 1
*Strob.* 115 ; *DeBruhl* v. *Neuffer*, *Ib.* 426.

But there may be other words in the bond or note which
show that it was the intention of the parties to extend the con-
tract beyond maturity.    It is not usual for bonds to be paid
the very day they fall due, and is it probable that while the
parties were stipulating about interest they would omit entirely
to make provision for the time the money might remain unpaid
after due?    Every case must be decided upon its own facts
and circumstances.    No two cases are in all respects precisely
alike.    The purpose is to ascertain the *intention* in each case
as it arises, and, in order to do this, it is proper to consider the
whole instrument in the light of surrounding circumstances.

There is no such inflexible, settled rule of construction as
would authorize us to say that the decision was erroneous in
the case of *Wright* v. *Eaves*, 10 *Rich. Eq.* 582, which held
that "on a bond conditioned to pay the principal sum in three
equal annual instalments, with interest from date, payable an-
nually as *it* becomes due, the interest annually accruing *after*
the last instalment fell due as well as that then and before
due bears interest."    So in the case before us there is more
than the phrase "with interest payable annually" in the super-
added words "*until the whole be paid.*"    This declaration
would seem to be conclusive as to the intention of the parties.

But it is ingeniously argued that these words are qualified
by those which immediately follow: "that is to say, one third
with interest on the whole November 10, 1866; one third with
like interest," etc.    If this were the proper view, and it had
been the intention that the interest should stop upon the fall-
ing due of the instalments respectively, the expression would
probably have been "until the *whole becomes due*," instead of
"until the whole *be paid.*"    The *videlicet*, "that is to say,"
manifestly had reference to and was intended to particularize
the words going before—"three equal annual instalments."
Some seeming confusion may be avoided and the intention
made plain if we consider the parts of the condition transposed,

and, taking the paragraph about interest out from the context where it stands, read it last, "with interest payable annually until the whole be paid." We agree with the referee and Circuit judge that such was the intention of the parties.

Second, in regard to the receipt on the bond of J. D. Kennedy to Miss Lang, April 17, 1871. Wm. M. Shannon, Esq., a lawyer of Camden, was the attorney of Miss Lang in renting the lands held in trust and collecting money due her. He had possession of her Kennedy bond, and at various times, as he received money, entered credits on it. One of these credits is very obscure, and the question made was as to its proper construction. A photograph of the receipt is in the case, and is in these words: "April 17 1871 Recd of J D K one hundred and ninety-two dollars ($192) in currency on this bond, on account of last years interest. Greenbacks at 10 per cent loose receipt." Signed, W. M. Shannon. The receipt appears to have been written over pencil marks previously made, and opposite the signature in small writing, as if added afterwards, are these words: "and balance of int and int on Chesnut's bond in full paid 1 Feby 70 by 250 cash." The master allowed a credit of only $250 in currency. The plaintiff excepted for that he did not allow, *in addition thereto*, the sum of $192, and all the interest thereon up to November 10, 1870, and also a payment of $33.33 January 8, 1873. The judge sustained the exception so far as to construe the receipt to be a payment in full of all interest then due on the bond to date of receipt, April 17, 1871, and allowed the $33.33. The plaintiff again excepts, claiming *two hundred and fifty dollars in addition* to all interest up to date of receipt.

The receipts endorsed on the bond show that the obligor made payments at different times to keep down the *annual interest;* that these payments were made up of various items, cash, currency, due bills, etc., but never exceeded the interest due. These payments thus made had been credited and the interest discharged up to November 20, 1869, and from that time until April 17, 1871, the date of the receipt,—one year and five months,—the interest and interest on interest was due, which, calculated as the receipts show the parties had done it

before, amounted to about as much as the aggregate of both sums indicated in the receipt.    The memoranda were short, not intended to be full entries, but merely to recall the transactions to the mind of Mr. Shannon, and it is greatly to be regretted that he is not here to explain them.    After inspection of the original bond and the credits on it, we see no better solution of the matter than that given by the judge, that all the payments went in liquidation of the interest up to that date.    We cannot say that his decision in this particular was error, and it is affirmed.

Third, in reference to the account against Miss Lang as trustee of the two tracts of land, Rock Hill and Doby.    In charging the trustee the master did not take proof of the rents and profits actually received, but charged her with the annual rental value, according to the proof of witnesses, being eleven bales of cotton each year from 1873 to 1878, inclusive.    To this the defendant excepted, claiming that without fault on her part certain rents were not received, particularly in the years 1877 and 1878, when one McLeod was her tenant, and that the master erred in excluding as evidence the professional books of Wm. M. Shannon, Esq., her attorney in law and fact, which would have shown that there were rents in each year not received.    Judge Pressley sustained the master as to the incompetency of the books as evidence for Miss Lang, but sustained the exceptions so far as to allow the defendant to prove due diligence in her efforts to collect the rents for the years 1877 and 1878, the burden of proof being on her.    From this ruling both parties appealed to this court: the defendant, because the opportunity to exonerate herself from liability in not collecting the rents in all the years was not allowed, and the books of Shannon were excluded; and the plaintiff, because such opportunity was allowed as to the years 1877 and 1878.

The defendant, Miss Lang, was declared to be a trustee as to the two tracts of land in question, and she was liable to account according to the principles which apply to the accountability of trustees generally.    One of the most important of them is, that the trustee must make such faithful endeavors to do his duty as a prudent man would exert in respect to his own

property; but if, notwithstanding such endeavors, there is loss without fault upon his part, he is not liable. As we understand it, Judge Pressley did not disregard this principle, but on the contrary in his rulings recognized it.

Miss Lang *prima facie* was chargeable with the value of the rents. The testimony was taken on the subject on both sides, and the master reported a fixed amount for each year. The judge recommitted the report so far as it related to the years 1877 and 1878, giving the defendant an opportunity to show that after due diligence she had failed to collect the rents of those particular years, but as to the other years in which she had possession, it seems that he thought the showing was not sufficient to justify him in having the subject re-examined, and he confirmed the report. The question was substantially as to the propriety of recommitting the report in whole or in part after the case had been heard before the master, and upon that subject the Circuit judge must have a large discretion, with which this court will not ordinarily interfere.

There was no legal right to have the report recommitted on account of error on the part of the master in refusing to admit in evidence the office account-books of Mr. Shannon, the agent and attorney. His account-book was not competent evidence in this case in behalf of his principal, Miss Lang, for the purpose of proving that rents due her had not been collected. Upon the point ruled adversely to the defendant there was concurrence between the master and Circuit judge.

The plaintiff also excepted because the judge refused to open the report and recommit for further testimony the question as to the value of the Doby place. The same rule applies here. The question had been fairly considered. No testimony offered had been improperly excluded. There was no claim of accident or surprise. It is important that litigation should have an end. The master had considered all the testimony offered and made his report. The judge thought that no injustice had been done, and that there was no necessity for having the matter re-examined, and we cannot say that he erred in declining to open up the question a second time.

In the accounting against Miss Lang for rents she was allowed credits for taxes paid on the lands, but as she was unable to produce the receipts for the taxes of the year 1875 ($145.12), the master refused to allow her credit for the same. The defendant excepted and the judge sustained the exception, but making it incumbent on her to show by proper evidence the amounts assessed upon said tracts of land for that year.

Being in possession it was the duty of the trustee to pay the taxes, which were a charge on the land. Taxes are said to be very certain, and there is no claim that either some one else paid these taxes or that they have not been paid. The land has never been forfeited for non-payment. Having paid the taxes every other year, both before and after 1875, it would seem that she had no motive to refuse payment for that year. As a lady, unaccustomed to business, she did not attend to the matter herself, and her trusted friend and agent, who was employed to do it, is dead. The judge held that the circumstances authorized the presumption of payment by Miss Lang, and we cannot say that such ruling was error.

The judgment of this court is that the judgment of the Circuit Court be affirmed.